HAROLD LICHTEN
(hlichten@llrlaw.com)*
SHANNON LISS-RIORDAN (SBN: 310719)
(sliss@llrlaw.com)
OLENA SAVYTSKA
(osavytska@llrlaw.com)*
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone: (617) 994-5800

SHANON J. CARSON*
(scarson@bm.net)
ERIC LECHTZIN (SBN: 248958)
(elechtzin@bm.net)
SARAH R. SCHALMAN-BERGEN*
(sschalman-bergen@bm.net)
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000

*Admitted Pro Hac Vice

*Attorneys for Plaintiff and the Class*

## UNITED STATES DISTRICT COURT
## NOTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARINDER GILL, individually and on behalf of all others similarly situated, <br><br>           Plaintiff, <br><br>         v. <br><br> 314e CORP., <br><br>           Defendant. | Case No. 3:17-cv-01062 <br><br> **JOINT NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT** <br><br> **Judge:**    **Hon. James Donato** <br> **Courtroom: 11** <br> **Date:**     **July 12, 2018** <br> **Time:**     **10:00 AM** |

**TABLE OF CONTENTS**

I.      INTRODUCTION ....................................................................................... 1

II.     PROCEDURAL HISTORY ...................................................................... 2

III.    CLASS NOTICE AND CLAIMS PROCEDURE ................................................ 3

IV.     LEGAL STANDARD................................................................................. 3

V.      DISCUSSION .......................................................................................... 4

        A.      Continuing Certification of the Settlement Class ...................................... 4

        B.      The *Hanlon* Factors Favor Final Approval .......................................... 5

                1.      The Strength of Plaintiff's Case............................................. 5

                2.      The Risk, Expense, Complexity, and Likely Duration of Continued
                        Litigation .............................................................................. 6

                3.      The Risk of Obtaining and Maintaining Class Action Status .................. 7

                4.      The Amount Offered in Settlement........................................... 8

                5.      The Extent of Discovery Completed........................................ 9

                6.      The Experience and Views of Counsel .................................... 10

                7.      Presence of a Governmental Participant ................................. 11

                8.      Positive Reaction of the Class Supports Final Approval ...................... 11

        C.      The *Bluetooth* Factors Favor Final Approval ..................................... 12

        D.      Service Awards to Class Representatives ............................................. 14

VI.     CONCLUSION........................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acosta v. Trans Union, LLC,*
   243 F.R.D. 377 (C.D. Cal. 2007)................................................................................ 9

*Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431 (E.D. Cal. 2013) ...................... 9

*California v. eBay, Inc.,*
   No. 5:12-CV-05874-EJD, 2015 WL 5168666 (N.D. Cal. Sept. 3, 2015) .................. 9

*Cancilla v. Ecolab, Inc.,*
   No. 12-CV-03001-JD, 2016 WL 54113 (N.D. Cal. Jan. 5, 2016)............................ 14

*Ching v. Siemens Indus., Inc.,*
   No. 11-CV-04838-MEJ, 2014 WL 2926210 (N.D. Cal. June 27, 2014)..................... 6, 7, 10

*Churchill Vill., L.L.C. v. Gen. Elec.,*
   361 F.3d 566 (9th Cir. 2004) ............................................................................ 4, 11

*Cruz v. Sky Chefs, Inc.,*
   No. C-12-02705 DMR, 2014 WL 7247065 (N.D. Cal. Dec. 19, 2014) .................. 11

*Destefano v. Zynga, Inc.,*
   No. 12-CV-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ................... 12

*Ebarle v. Lifelock, Inc.,*
   No. 15-CV-00258-HSG, 2016 WL 5076203 (N.D. Cal. Sept. 20, 2016) ............... 13

*Evans v. Linden Research, Inc.,*
   No. C-11-01078 DMR, 2014 WL 1724891 (N.D. Cal. Apr. 29, 2014) ................... 11

*Franco v. Ruiz Food Prod., Inc.,*
   No. 1:10-CV-02354-SKO, 2012 WL 5941801 (E.D. Cal. Nov. 27, 2012) ............. 5, 7

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1998) ..................................................................... 3, 5, 11

*Hopson v. Hanesbrands Inc.,*
   No. CV-08-0844 EDL, 2009 WL 928133 (N.D. Cal. Apr. 3, 2009)........................ 8

*In re Bluetooth Headset Prod. Liab. Litig.,*
   654 F.3d 935 (9th Cir. 2011) .............................................................................. 12

*In re Google Referrer Header Privacy Litig.,*
   87 F. Supp. 3d 1122 (N.D. Cal. 2015).............................................................. 3, 5

*In re High-Tech Employee Antitrust Litig.,*
   No. 11-CV-02509-LHK, 2015 WL 5158730 (N.D. Cal. Sept. 2, 2015) ................. 13

*In re LDK Solar Sec. Litig.*,
  No. C 07-5182 WHA, 2010 WL 3001384 (N.D. Cal. July 29, 2010) .......................................9

*In re Linerboard Antitrust Litig.*,
  296 F. Supp. 2d 568 (E.D. Pa. 2003) ........................................................................................9

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................................................. 10, 11

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) ...................................................................................................12

*In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*,
  295 F.R.D. 438 (C.D. Cal. 2014) ..........................................................................................3, 8

*In re TracFone Unlimited Serv. Plan Litig.*,
  112 F. Supp. 3d 993 (N.D. Cal. 2015) .....................................................................................12

*In re Warfarin Sodium Antitrust Litig.*,
  212 F.R.D. 231 (D. Del. 2002) ..................................................................................................6

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*,
  No. C-07-5944 JST, 2016 WL 3648478 (N.D. Cal. July 7, 2016) ............................................13

*Isby v. Bayh*,
  75 F.3d 1191 (7th Cir. 1996) ...................................................................................................10

*Larsen v. Trader Joe's Co.*,
  No. 11-CV-05188-WHO, 2014 WL 3404531 (N.D. Cal. July 11, 2014) ...........................13, 14

*Moore v. PetSmart, Inc.*,
  No. 5:12-CV-03577-EJD, 2015 WL 5439000 (N.D. Cal. Aug. 4, 2015)...........................5, 6, 7

*Myles v. AlliedBarton Sec. Servs., LLC*,
  No. 12-cv-05761, 2014 WL 6065602 (N.D. Cal. Nov. 12, 2014)............................................14

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004)................................................................................3, 7, 8, 11

*Norris-Wilson v. Delta-T Grp., Inc.*,
  270 F.R.D. 596 (S.D. Cal. 2010) ................................................................................................4

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
  688 F.2d 615 (9th Cir. 1982)..................................................................................................3, 6

*Padron v. Golden State Phone & Wireless*,
  No. 16-CV-04076-BLF, 2018 WL 2234550 (N.D. Cal. May 16, 2018)...................8, 9, 10, 11

*Reed v. 1-800 Contacts, Inc.*,
  No. 12-CV-02359 JM BGS, 2014 WL 29011 (S.D. Cal. Jan. 2, 2014) ....................................9

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ...............................................................................................7, 10

*Scovil v. FedEx Ground Package Sys., Inc.*,
    No. 1:10-CV-515-DBH, 2014 WL 1057079 (D. Me. Mar. 14, 2014) ..................................... 11

*Smith v. Am. Greetings Corp.*,
    No. 14-CV-02577-JST, 2016 WL 2909429 (N.D. Cal. May 19, 2016) .................................. 13

*Spann v. J.C. Penney Corp.*,
    211 F. Supp. 3d 1244 (C.D. Cal. 2016) ..................................................................... 13

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ........................................................................... 14, 15

*Tadepalli v. Uber Techs., Inc.*,
    No. 15-CV-04348-MEJ, 2016 WL 1622881 (N.D. Cal. Apr. 25, 2016) ................................. 13

*Vasquez v. Coast Valley Roofing, Inc.*,
    266 F.R.D. 482 (E.D. Cal. 2010) ........................................................................ 9, 10

*Villalpando v. Exel Direct Inc.*,
    303 F.R.D. 588 (N.D. Cal. 2014) ............................................................................ 4

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ......................................................................................... 4

*Wren v. RGIS Inventory Specialists*,
    No. C-06-05778 JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ....................................... 11

**Statutes**

29 U.S.C. § 201 ............................................................................................... 1

Cal. Bus. & Prof. Code § 17200 ............................................................................... 1

Cal. Lab. Code §§ 201-203, 226, 226(a), 226.7, 510, 512, and 1194 ...................................... 1, 2

**Rules**

Fed. R. Civ. P. 23 .................................................................................... *passim*

**Regulations**

29 C.F.R. § 541.301 ........................................................................................... 6

29 C.F.R. § 541.400 ........................................................................................... 6

Cal. Code Regs. tit. 8, § 11040(3); (2) ...................................................................... 6

**TO DEFENDANT AND ITS ATTORNEYS OF RECORD: PLEASE TAKE NOTICE** that on Thursday, July 12, 2018 at 10:00 a.m., or as soon thereafter as the matter can be heard before the Honorable James Donato, in Courtroom 11, U.S. District Court, San Francisco Courthouse, located at 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiff will and hereby does move the Court pursuant to Fed. R. Civ. P. 23 for an Order granting the parties' motion for final approval of settlement.

This Motion is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities below; the Declaration of Eric Lechtzin filed concurrently herewith; all other pleadings and papers filed in this action; and any argument or evidence that may be presented at the hearing in this matter.

## I.  **INTRODUCTION**

Pursuant to Fed. R. Civ. P. 23(e), Plaintiff Barinder Gill ("Plaintiff") hereby requests that the Court finally approve the class action settlement between Plaintiff, on behalf of similarly situated workers, and Defendant 314e Corporation ("Defendant" or "314e") (together, the "Parties"). As the Court will recall, Plaintiff alleges that 314e violated: (1) the federal Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"); (2) Cal. Lab. Code §§ 201-203, 226, 226(a), 226.7, 510, 512, and 1194; and (3) Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL") through its uniform practice of failing to pay persons who provided information technology consulting and/or support services ("Consultants") overtime compensation when they worked more than forty (40) hours per week.

The Settlement includes a gross cash payment of $125,000 to the Class, and additional cash payments of $8,500 to Plaintiff Barinder Gill and $4,000 to opt-in plaintiff Christopher Walker (collectively, the "Settlement Proceeds"). [Settlement Agreement ¶ III.14.m.] These sums are in addition to approximately $150,000 that was paid to members of the class in individual settlements that class members entered into with 314e after the filing of the Complaint. Plaintiff believes that her filing of the instant class action lawsuit was a catalyst for such individual settlements. 314e has taken no position on this point. Thus, Plaintiff's filing of the instant lawsuit will result in a total benefit to the class in the amount of approximately $287,500, not including the payments to Plaintiff Gill and Opt-in Plaintiff Walker.

Under the Settlement Agreement, every Participating Class Member will receive a Settlement Award, and none of the funds from the Settlement Proceeds will revert to 314e. [*Id.*] In total there are 159 putative class members, who worked a collective total of approximately 6,000 hours of overtime during the class period. Thus, 157 Class Members have elected to participate in the Settlement, and the average payment per class member will be $1,428.99 (inclusive of payments previously made by 314e for individual settlements). This is an extremely favorable settlement under the circumstances and constitutes over 100% of single damages, after payment of fees and expenses.

The Court previously reviewed the parties' Settlement Agreement in its order granting preliminary approval of the settlement. [ECF No. 65.] Nothing has changed since that time that

should alter the Court's conclusion that the settlement is "fair, reasonable, adequate and in the best interests of the settlement class."

## II.     **PROCEDURAL HISTORY**

On March 1, 2017, Plaintiff filed this Class and Collective Action Complaint in the United States District Court, Northern District of California. ("Complaint") (ECF No. 1) alleging wage/penalty claims for: (1) the FLSA; (2) Cal. Lab. Code §§ 201-203, 226, 226(a), 226.7, 510, 512, and 1194; and (3) the UCL. The Complaint also notified Defendant of Plaintiff's intent to bring a claim under the Private Attorney General Act ("PAGA").

After the Complaint was filed, the Parties agreed to participate in a Settlement Conference before Magistrate Judge Donna M. Ryu. The Parties engaged in substantial informal discovery and participated in an in-person settlement conference in the U.S. District Court for the Northern District of California in Oakland, California, before Magistrate Ryu. [*See* Declaration of Eric Lechtzin ("Lechtzin Decl.") ¶¶ 4-7] The settlement conference resulted in an agreement in principle for a class settlement of this matter. [*Id.* ¶ 7] The terms of the Parties' settlement are set forth in a Settlement Agreement (the "Settlement Agreement" or "Agreement", attached hereto as Exhibit 1 to the Lechtzin Decl.).

On November 9, 2017, a hearing was held on the parties' Joint Motion for Preliminary Approval of Settlement. The Court denied the Motion and directed the parties to address certain deficiencies, which were identified in the Court's Order of November 16, 2017. [ECF No. 62.] The parties filed an Amended Motion for Preliminary Approval to address such deficiencies. On March 1, 2018, a hearing was held on the Amended Motion for Preliminary Approval.

On March 9, 2018, this Court granted preliminary approval of the Parties' settlement and class certification. [ECF No. 65.] Following the Court's granting of preliminary approval, the Parties sent notice of the settlement to all class members, as outlined in the Settlement Agreement. [Lechtzin Dec. ¶¶ 10-12.]

On April 30, 2018 – more than fourteen days before the end of the notice period – Plaintiff filed a Motion for Attorneys' Fees and Costs. [ECF No. 68.] Following this notice process, the Parties have received one objection to the settlement, and two requests for an exclusion. [Lechtzin Dec. ¶ 13; Grewal Decl. ¶ 3.]

### III. CLASS NOTICE AND CLAIMS PROCEDURE

Class Members received notice pursuant to the court's order granting preliminary approval of the class action settlement. [ECF No. 65.] The claims process is now complete.

As shown in the Declaration from Defendant's Counsel, on March 16, 2018, Defendant mailed and emailed the Notice packages to all 159 class members. [Grewal Decl. ¶ 2.] Defendant sent a duplicate set of the Notice packages through mail and email on April 13, 2018. [*Id.*] As of May 15, 2018, there was one objection, and two Requests for Exclusion. [*Id.* at ¶3.]

A total of 157 Class Members have elected to participate in the settlement, representing 98% of the total Class Members. [*Id.* at ¶ 4.]

The average settlement payment per valid claimant is $1,428.99. [*Id.* at ¶ 5.] The highest estimated settlement payment is $13,008.65. [*Id.*] The lowest estimated settlement payment is $16.25. [*Id.*]

### IV. LEGAL STANDARD

A class action may be settled only with the court's approval. Fed. R. Civ. P. 23(e). "Approval under Rule 23(e) involves a two-step process 'in which the [c]ourt first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted.'" *In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 448 (C.D. Cal. 2014) (quoting *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004)). "At the final approval stage, the primary inquiry is whether the proposed settlement 'is fundamentally fair, adequate, and reasonable.'" *In re Google Referrer Header Privacy Litig.*, 87 F. Supp. 3d 1122, 1127 (N.D. Cal. 2015), *aff'd*, 869 F.3d 737 (9th Cir. 2017) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon*, 150 F.3d at 1026 (citing *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982)).

In considering whether finally to approve a class settlement, the court should be "mindful that the law favors the compromise and settlement of class action suits." *In re Google*

1   *Referrer Header Privacy Litigation*, 87 F. Supp. 3d at 1127 (citing *Churchill Vill., L.L.C. v.*
2   *Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004)).

3   **V.      DISCUSSION**

4       **A.      Continuing Certification of the Settlement Class**

5         The final approval analysis begins with an examination of whether class treatment
6   remains appropriate. The Court found at the preliminary approval stage that Rule 23(a)'s
7   requirements of numerosity, commonality, typicality, and adequate protection by the named
8   representative were satisfied. As to those issues, Plaintiff anticipated a class comprised of
9   approximately 160 individuals who all share a common injury, thus meeting the numerosity
10  requirement. *See Villalpando v. Exel Direct Inc.*, 303 F.R.D. 588, 605–6 (N.D. Cal. 2014)
11  ("[T]he numerosity requirement [is] satisfied when the class comprises 40 or more members.").

12        The commonality requirement is met where members of the class share at least one
13  common question. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) ("[F]or
14  purposes of Rule 23(a)(2) '[e]ven a single [common] question' will do..."). The existence of
15  this common issue for each class member may be determined by resolving one question:
16  whether they have been improperly classified as exempt employees and illegally denied
17  overtime compensation. Each Class Member was hired to perform computer training and/or
18  support and/or consulting to healthcare professionals at hospitals, and they each performed the
19  same or similar job. Further, each was categorized by 314e as exempt.

20        With respect to typicality, Plaintiff's claims are the same as those of other Settlement
21  Class Members, as they all challenge 314e's policy of classifying Consultants as exempt and
22  denying them overtime compensation. *See Norris-Wilson v. Delta-T Grp., Inc.*, 270 F.R.D. 596,
23  605 (S.D. Cal. 2010) (noting that "[t]he injuries alleged—a denial of various benefits—and the
24  alleged source of those injuries—a sinister classification by an employer attempting to evade its
25  obligations under labor laws—are the same for all members of the putative class" such that
26  "[t]he typicality requirement is therefore satisfied"). For that reason, Plaintiff satisfies Rule
27  23(a)'s adequacy requirement. Specifically, Plaintiff has the same interests as the Settlement
28  Class Members – to be paid wages in full.

As to Rule 23(b)(3)'s predominance requirement, as the common questions concerning 314e's classification of Consultants as exempt predominates over individualized issues, and the class action mechanism has been a superior process for this litigation. "The alternatives to class certification—millions of separate, individual and time-consuming proceedings or a complete abandonment of claims by a majority of class members—were not preferable." *In re Google Referrer Header Privacy Litigation*, 87 F. Supp. 3d at 1128.

Since a sufficient showing was made as to all of the Rule 23 factors, the Court conditionally certified the Settlement Class for preliminary approval purposes. As demonstrated above, certification under Rule 23 should continue for final approval of the Settlement.

### B.    The *Hanlon* Factors Favor Final Approval

Evaluating a settlement proposal at the final approval stage requires the district court to balance a number of factors: (1) the strength of the Plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; (8) and the reaction of the class members to the proposed settlement. *Hanlon*, 150 F.3d at 1026.

In this case, the Court has already completed a substantial review of the settlement terms at the preliminary approval stage. [ECF No. 65.] Nothing has changed since the Court preliminarily approved the settlement that would require it to reconsider its approval. Indeed, the fact that that there has been only one objection to the settlement and two requests for exclusion provides further support for its approval.

### 1.    The Strength of Plaintiff's Case

"The initial fairness factor addresses Plaintiff's likelihood of success on the merits and the range of possible recovery." *Franco v. Ruiz Food Prod., Inc.*, No. 1:10-CV-02354-SKO, 2012 WL 5941801, at *11 (E.D. Cal. Nov. 27, 2012). "There is no particular formula by which that outcome must be tested." *Moore v. PetSmart, Inc.*, No. 5:12-CV-03577-EJD, 2015 WL

5439000, at *5 (N.D. Cal. Aug. 4, 2015), *aff'd*, No. 16-16124, 2018 WL 1531060 (9th Cir. Mar. 29, 2018), *appeal dismissed* (July 27, 2016). Indeed, "determining the probability and likelihood of a Plaintiff's success on the merits of a class action litigation, 'the district court's determination is [often] nothing more than an amalgam of delicate balancing, gross approximations and rough justice.'" *Moore*, 2015 WL 5439000, at *5 (quoting *Officers for Justice*, 688 F.2d at 625).

Here, there were several major and substantial risks with respect to the merits of Plaintiff's claims that counsel had to consider. Indeed, Plaintiff would risk losing both class and individual claims on the merits at trial. Absent a settlement, 314e would assert the following defenses, among others: (1) Plaintiff and the Settlement Class are professional consultants, exempt from overtime under 29 C.F.R. § 541.301 or Cal. Code Regs. tit. 8, § 11040(3); (2) Plaintiff and the Settlement Class are exempt, under the computer professional exemption to the FLSA and California wage law under 29 C.F.R. § 541.400 and Cal. Code Regs. tit. 8, § 11040(3); and (3) any overtime claim would be subject to individual proof and thus not amendable to class or collective treatment. [Lechtzin Decl. ¶ 23.] As in *Moore*, "[g]iven the wage-and-hour theory advanced by Plaintiffs and the factual issues that could have arisen showing variation of work performed between different class members, settlement appears to provide a better result for the putative class members than continued litigation." *Moore*, 2015 WL 5439000, at *6.

For these reasons, the recovery for the Class, which constitutes over 100% of single damages, after payment of fees and expenses, is an outstanding result in light of the risks Plaintiff and the Class faced in this case, and justifies final approval of the Settlement.

### 2. The Risk, Expense, Complexity, and Likely Duration of Continued Litigation

This factor considers "the probable costs, in both time and money, of continued litigation.'" *Ching v. Siemens Indus., Inc.*, No. 11-CV-04838-MEJ, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014) (citing *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 254

1   (D. Del. 2002), *aff'd*, 391 F.3d 516 (3d Cir. 2004)).[1] "[U]nless the settlement is clearly

2   inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with

3   uncertain results." *Franco*, 2012 WL 5941801, at *12 (citing *National Rural*

4   *Telecommunications Cooperative*, 221 F.R.D. at 526).

5       Here, the parties agreed to participate in a settlement conference at an early stage of the

6   litigation and to reach a timely resolution for Settlement Class Members. There remained

7   extensive and complex litigation to follow had the settlement not been reached. *See Moore*,

8   2015 WL 5439000, at *6 (granting final approval where the "case would have gone through

9   various hurdles that would have prolonged litigation and recovery to putative class members.").

10  For example, the parties would have had to brief the merits of class certification, and would also

11  have likely undergone summary judgment briefing regarding the merits of Plaintiff's claims.

12  Lastly, the parties saved the time and expense of conducting discovery in this matter, which

13  typically proves to be a lengthy and costly process in wage and hour class actions such as this.

14      Thus, the length, expense, and uncertainty of future litigation weighs in favor of final

15  approval.

16          **3.      The Risk of Obtaining and Maintaining Class Action Status**

17      Plaintiff faced risk in both obtaining and maintaining class action status through trial.

18  Other courts have recognized these risks as weighing in favor of granting final approval to class

19  action settlements. *See, e.g., Ching*, 2014 WL 2926210, at *4 ("Plaintiff has identified several

20  meritorious arguments that Defendants could raise to class certification in the event this lawsuit

21  was to proceed" such that "[g]iven the risk in obtaining and maintaining class certification, the

22  Court finds that this factor weighs in favor of approving the settlement"); *Rodriguez v. W.*

23  *Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) (noting that "[a] district court may decertify a

24  class at any time" such that even after class certification, "the risk remained that the nationwide

25  class might be decertified" and this factor therefore weighed in favor of settlement); *Moore*,

26  2015 WL 5439000, at *6 ("[T]he notion that a district court could decertify a class at any time is

27  _____

28  [1] To the extent this factor overlaps with the risk considerations discussed above, Plaintiff
    incorporate their previous analysis into this discussion.

an inescapable and weighty risk that weighs in favor of a settlement"). Accordingly, the risk in both obtaining and maintaining class action status supports granting final approval of the Settlement.

### 4.    The Amount Offered in Settlement

"In assessing the consideration obtained by the class members in a class action settlement, 'it is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness.'" *Padron v. Golden State Phone & Wireless*, No. 16-CV-04076-BLF, 2018 WL 2234550, at *4 (N.D. Cal. May 16, 2018) (quoting *National Rural Telecommunications Cooperative*, 221 F.R.D. at 527). "'In this regard, it is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial.'" *Padron*, 2018 WL 2234550, at *4 (quoting *National Rural Telecommunications Cooperative*, 221 F.R.D. at 527).

Here, the Settlement Agreement provides significant compensation to the Settlement Class. As explained in the Motion for Preliminary Approval, it reflects over 100% of the unpaid overtime wages allegedly owed to Settlement Class Members. This represent a substantial recovery of potential damages for the Settlement Class. Moreover, the average recovery is $1,428.99, ranging from $13,008.65 for a Settlement Class Member who worked over 109 weeks for 314e during the statute of limitations period, to $16.25 for people who worked only 1 week for 314e during the statute of limitations period. [Grewal Decl. ¶ 5.][2]

Courts have granted final approval of settlements in which the recovery is a fraction of the recovery for Settlement Class Members in the instant case.[3] Moreover, courts have

---

[2] These figures have been adjusted from the Parties' Motion for Preliminary Approval to account for the redistribution of the settlement shares of the two Class Members who requested exclusion from the Settlement.

[3] Indeed, other courts have approved settlements accounting for far lower percentages of the total possible recovery. *See, e.g., Hopson v. Hanesbrands Inc.*, No. CV-08-0844 EDL, 2009 WL 928133, at *8 (N.D. Cal. Apr. 3, 2009) ("The settlement … represents less than two percent of that amount," but "may be justifiable … given … significant defenses that increase the risks of litigation."); *In re Toys R Us-Delaware, Inc.--Fair and Accurate Credit Transactions Act (FACTA) Litigation*, 295 F.R.D. at 453–54 (granting final approval of a settlement providing for payment reflecting 3% of possible recovery ($391.5 million settlement with exposure up to

recognized the value of obtaining relatively prompt settlements and the benefits to class members of receiving payments sooner rather than later, where litigation could extend for years on end, thus significantly delaying any payments to class members. "A court may consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 489 (E.D. Cal. 2010) (internal citation omitted); *see also Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 446 (E.D. Cal. 2013) (noting that "there were significant risks in continued litigation and no guarantee of recovery" whereas "[t]he settlement [] provides Class Members with another significant benefit that they would not receive if the case proceeded—certain and prompt relief"); *California v. eBay, Inc.*, No. 5:12-CV-05874-EJD, 2015 WL 5168666, at *4 (N.D. Cal. Sept. 3, 2015) ("Since a negotiated resolution provides for a certain recovery in the face of uncertainty in litigation, this factor weighs in favor of settlement").

Thus, the monetary amount offered to Settlement Class Members is more than substantial enough to weigh this factor in favor of final approval.

### 5.    The Extent of Discovery Completed

For the parties "to have brokered a fair settlement, they must have been armed with sufficient information about the case to have been able to reasonably assess its strengths and value." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 396 (C.D. Cal. 2007). Thus, adequate discovery and the participation in a settlement conference with an experienced magistrate judge supports a finding that settlement negotiations were well-informed. *See Padron*, 2018 WL 2234550, at *5 (where plaintiff "engaged in extensive informal discovery, research, and analysis

---

$13.05 billion)); *Reed v. 1-800 Contacts, Inc.*, No. 12-CV-02359 JM BGS, 2014 WL 29011, at *6 (S.D. Cal. Jan. 2, 2014) (granting final approval where settlement represented 1.7% of possible recovery (net settlement fund of $8,288,719.16, resolving claims worth potentially $499,420,000)); *In re LDK Solar Sec. Litig.*, No. C 07-5182 WHA, 2010 WL 3001384, at *2 (N.D. Cal. July 29, 2010) (granting final approval where settlement was 5% of estimated damages); *In re Linerboard Antitrust Litig.*, 296 F. Supp. 2d 568, 581 & n.5 (E.D. Pa. 2003) (gathering cases where courts approved settlements achieving single-digit percentages of potential recoveries).

of class-wide payroll and timekeeping data prior to reaching the settlement … Plaintiff [was] in a strong position to evaluate the case and conclude that settlement was the best way forward.").

Here, "[b]y the time the settlement was reached, the litigation had proceeded to a point in which both plaintiffs and defendants had a clear view of the strengths and weaknesses of their cases." *Vasquez*, 266 F.R.D. at 489 (internal citations omitted). The Parties engaged in significant informal discovery and participated in an in person settlement conference before Magistrate Judge Ryu. [Lechtzin Decl. ¶ 5.] The settlement the parties have reached was the result of thorough and passionate negotiations by experienced counsel familiar with the applicable law, class action litigation, and the facts of this case. [*Id.* ¶¶ 6-7, 15-16, 19, 23.] Thus, the Parties had ample information, expert guidance from an experienced Magistrate Judge, and intimate familiarity with the strengths and weaknesses of their respective cases. As such, there can be no doubt that the Class Settlement is the result of exhaustive arm's-length discussions.

### 6.    The Experience and Views of Counsel

The Ninth Circuit has noted that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez*, 563 F.3d at 967. As such, "[a] district court is 'entitled to give consideration to the opinion of competent counsel that the settlement [is] fair, reasonable, and adequate.'" *Ching*, 2014 WL 2926210, at *5 (quoting *Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996)). Consequently, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008).

Here, counsel believes that the settlement provides substantial monetary benefits to Settlement Class Members, and thus, is in the best interests of the Class. [Lechtzin Decl. ¶ 15-17, 22¶.]  As the shown in Plaintiff's Motion for Attorneys' Fees (ECF. No. 68), Plaintiff and the Class are represented by experienced counsel with expertise in wage-and-hour litigation. Final approval is supported where, as here, "Plaintiff is represented by competent and experienced wage and hour class action counsel who have been appointed as counsel in numerous cases alleging similar claims." *Padron*, 2018 WL 2234550, at *5.

### 7.     Presence of a Governmental Participant

As in *Padron*, "Because there is no governmental entity involved in this litigation, this factor is inapplicable." *Padron*, 2018 WL 2234550, at *5.

### 8.     Positive Reaction of the Class Supports Final Approval

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *National Rural Telecommunications Cooperative*, 221 F.R.D. at 528–29; *see also Hanlon*, 150 F.3d at 1027 ("the fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness."); *Cruz v. Sky Chefs, Inc.*, No. C-12-02705 DMR, 2014 WL 7247065, at *5 (N.D. Cal. Dec. 19, 2014) ("A court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it.").

Here, the Court received only one objection (ECF # 66) and two requests for exclusion out of the 159 Class Members who received the Class Notice. For the reasons set forth in Plaintiff's Motion for Attorney's Fees this objection lacks merits and should be overruled. [ECF No. 68, pp. 10-11.] *See Evans v. Linden Research, Inc.*, No. C-11-01078 DMR, 2014 WL 1724891, at *5 (N.D. Cal. Apr. 29, 2014) (stating: "Having overruled the only objection received, the court finds that viewed as a whole, the proposed settlement is sufficiently fair, adequate, and reasonable.") (internal quotation and citation omitted).

The fact that only one class member objected to the Settlement and only two class members have requested exclusion weighs in favor of final approval. *See Churchill Village, L.L.C.*, 361 F.3d at 577 (affirming settlement with 45 objections out of 90,000 notices sent); *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *11 (N.D. Cal. Apr. 1, 2011), *supplemented*, No. C-06-05778 JCS, 2011 WL 1838562 (N.D. Cal. May 13, 2011) (granting final approval where "only 16 class members—constituting 0.02%—have filed objections to the proposed settlement"); *In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d at 1043 (stating that objections from 3 out of 57,630 Class Members favors approval of the Settlement "by any standard"); *Scovil v. FedEx Ground Package Sys., Inc.*, No. 1:10-CV-515-

DBH, 2014 WL 1057079, at *1 (D. Me. Mar. 14, 2014) (granting final approval where "13 of 141 Plaintiff (9.2%) did file objections").

Accordingly, the reaction of the Class supports final approval.

### C.    The *Bluetooth* Factors Favor Final Approval

The Ninth Circuit has held that when a settlement agreement is negotiated prior to contested class certification, courts must show not only a comprehensive analysis of the *Hanlon* factors, but also that the settlement did not result from collusion among the parties. *See Destefano v. Zynga, Inc.*, No. 12-CV-04007-JSC, 2016 WL 537946, at *8 (N.D. Cal. Feb. 11, 2016) (citing *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946–47 (9th Cir. 2011)). Thus, the Court must examine the settlement for three subtle "warning signs" of collusion: "(1) whe[ther] class counsel receives a disproportionate distribution of the settlement, or [] the class receives no monetary distribution but counsel is amply awarded[;] (2) whe[ther] the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds without objection by the defendant …[;] and (3) whe[ther] the parties arrange for fees not awarded to revert to defendants rather than to be added to the class fund." *Destefano*, 2016 WL 537946, at *9.  Even where one or more of the signs outlined above is present, however, "the presence of these factors is in no way dispositive." *In re TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993, 1007 (N.D. Cal. 2015) (granting final approval to this settlement despite the presence of two of *Bluetooth's* three warning signs). Instead, "the *Bluetooth* factors are merely 'warning signs' that indicate the *potential* for collusion" and "the Court is merely obligated to assure itself that the fees awarded in the agreement were not unreasonably high in light of the results obtained for class members." *Id.*

Here, the first factor – whether class counsel receives a disproportionate distribution of the settlement – is clearly not problematic. In common fund settlements, the Ninth Circuit sets a "benchmark" fee award at 25% of the recovery obtained. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015). Plaintiff has requested this "benchmark" 25% fee award here.

Likewise, the second factor does not present a barrier to final approval. Although the parties' agreement does contain a "clear sailing" provision, "a 'clear sailing provision does not

signal the possibility of collusion where, as here, Class Counsel's fee will be awarded by the Court from the same common fund as the recovery to the class.'" *Smith v. Am. Greetings Corp.*, No. 14-CV-02577-JST, 2016 WL 2909429, at *7 (N.D. Cal. May 19, 2016) (quoting *In re High-Tech Employee Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 WL 5158730, at *14 (N.D. Cal. Sept. 2, 2015)); *see also Larsen v. Trader Joe's Co.*, No. 11-CV-05188-WHO, 2014 WL 3404531, at *8 (N.D. Cal. July 11, 2014), *appeal dismissed* (Nov. 17, 2014) ("Under the second factor, clear sailing provisions generally do not raise concerns where, as here, the fees are to come from the settlement fund"). "The dominant risk with clear sailing provisions is that defendants might persuade class counsel to accept a lower payment to the class in exchange for a promise not to object to a (presumably higher) fee." *In re: Cathode Ray Tube (Crt) Antitrust Litig.*, No. C-07-5944 JST, 2016 WL 3648478, at *10 (N.D. Cal. July 7, 2016), *dismissed sub nom. In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 16-16368, 2017 WL 3468376 (9th Cir. Mar. 2, 2017). However, where, as here, counsel's fees will be awarded from a common fund and none of the money will revert to 314e, the clear-sailing provision presents no concern because 314e is paying the same fixed amount either way. In other words, such a provision is consistent with 314e's "own interests in minimizing liability," and is not a sign of collusion. *Rodriguez*, 563 F.3d at n. 5.

Lastly, the agreement does not include a "kicker" provision that would allow unclaimed funds to revert to 314e. *See, e.g., Ebarle v. Lifelock, Inc.*, No. 15-CV-00258-HSG, 2016 WL 5076203, at *11 (N.D. Cal. Sept. 20, 2016), *appeal dismissed sub nom. Ebarle v. Ellingwood*, No. 16-16685, 2017 WL 4331022 (9th Cir. May 8, 2017) (noting that "[u[nlike n *In re Bluetooth Headset*, the $68 million fund is non-reversionary" and "[b]ecause there is no 'kicker' contained in the agreement, remaining money in the Settlement Fund does not revert to Defendant and instead is redistributed on a pro rata basis to the Class"); *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244 (C.D. Cal. 2016), *appeal dismissed sub nom. Spann v. J.C. Penney Corp., Inc.*, No. 16-56474, 2016 WL 9778633 (9th Cir. Nov. 7, 2016) (noting that "the entire settlement amount will be distributed, and no funds will revert to defendant."); *Tadepalli v. Uber Techs., Inc.*, No. 15-CV-04348-MEJ, 2016 WL 1622881, at *9 (N.D. Cal. Apr. 25, 2016) ("The absence of a "kicker provision" in the parties' settlement and the fact that the class is

receiving 100% of the fees incurred reduces the likelihood that the parties colluded to confer benefits on each other at the expense of class members"); *Larsen*, 2014 WL 3404531, at *8 ("As to the third factor, the Settlement Agreement provides that unclaimed fees do not revert to Trader Joe's, but will be distributed to class members through a product distribution in Trader Joe's stores").

### D.    Service Awards to Class Representatives

The parties request that the Court approve service awards of $8,000 for Plaintiff Barinder Gill and $4,000 for opt-in plaintiff Christopher Walker. The parties are cognizant that the Court has previously expressed "skepticism" about incentive awards for class representatives. *Cancilla v. Ecolab, Inc.*, No. 12-CV-03001-JD, 2016 WL 54113, at *4 (N.D. Cal. Jan. 5, 2016) (citing *Myles v. AlliedBarton Sec. Servs., LLC*, No. 12-cv-05761, 2014 WL 6065602, at *6 (N.D. Cal. Nov. 12, 2014)). However, this Court has not allowed such skepticism to serve as "an inflexible rule" barring such awards. *Cancilla*, 2016 WL 54113, at *4. Rather, this Court has elucidated several "factors that warrant the award of additional money to the named representatives above and beyond what the rank-and-file class members get." *Id.* These factors include: "'[1] the actions the plaintiff has taken to protect the interests of the class, [2] the degree to which the class has benefitted from those actions,...[3] the amount of time and effort the plaintiff expended in pursuing the litigation...and [4]reasonabl[e] fear[s of] workplace retaliation.'" *Id.* (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003)). Here, at least three of these factors support service awards.

First, Plaintiff commenced this class action alone. [Lechtzin Decl. ¶ 3.] Going it alone in a lawsuit against her employer was brave, particularly considering the small size of the company. In response to the filing of this action, Defendant immediately began making settlement offers to every member of the class it was able to contact, and by May 9, 2017, Defendant had entered into dozens of individual settlements with putative class members. [*Id.* ¶¶ 4, 17 ($150,000.00 was paid to Class Members in individual settlements negotiated directly with 314e after Plaintiff filed her Complaint).] Second, the Class clearly benefited from Plaintiff's action. They received substantial payments almost immediately after she filed her Complaint, and with the instant Class-wide settlement, all 157 participating Class Members will

obtain more than 100% of their single damages – notably the average recovery is estimated to be $1,428 per Class Member. [*Id.* ¶ 22.] Furthermore, the swift pace of this litigation conserved resources for the parties by keeping both attorneys' fees and litigation costs low.

Third, Plaintiff expended time and effort in pursuing the litigation. She worked with counsel, providing background information about her employment, about 314e's policies and practices, and about the allegations in this lawsuit. [*Id.* ¶ 26.] She also provided documents concerning her tenure with 314e, reviewed pleadings, and conferred with her counsel concerning litigation strategy. [*Id.*]

Fourth, both Plaintiff Gill and opt-in Plaintiff Walker have had serious fears of workplace retaliation. They both risked their reputations in the community and in their place of employment in order to participate in this case on behalf of the Settlement Class. [*Id.* ¶¶ 26-27.] Notably the healthcare information technology consulting community is small, and Plaintiff and opt-in Plaintiff have risked retaliation, blacklisting, diminished prospects for future employment within this industry, and diminished earnings by stepping forward in this class action lawsuit. [*Id.*] For these reasons, the Court should grant the requested service awards.

## VI.    CONCLUSION

For the foregoing reasons, the Court should grant final approval of the parties' settlement and enter the proposed order submitted herewith.

Date:  June 25, 2018

Respectfully submitted,

/s/ Eric Lechtzin

HARMEET K. DHILLON (SBN: 207873)
harmeet@dhillonlaw.com
RAVDEEP S. GREWAL (SBN: 308447)
rgrewal@dhillonlaw.com
DHILLON LAW GROUP INC.
177 Post Street, Suite 700
San Francisco, CA 94108
Telephone: (415) 433-1700
Facsimile: (415) 520-6593

*Counsel for Defendant*

ERIC LECHTZIN (SBN: 248958)
(elechtzin@bm.net)
SHANON J. CARSON*
(scarson@bm.net)
SARAH R. SCHALMAN-BERGEN*
(sschalman-bergen@bm.net)
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604


HAROLD LICHTEN*
(hlichten@llrlaw.com)
SHANNON LISS-RIORDAN (SBN: 310719)
(sliss@llrlaw.com)
OLENA SAVYTSKA*
(osavytska@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone: (617) 994-5800

*Counsel for Plaintiff and the Class*

*Admitted *pro hac vice*

JOINT NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT
Case No. 3:17-cv-01062
16